RACHEL JULAGAY
Assistant Federal Defender
Federal Defenders of Montana
Great Falls Office
104 2nd Street South, Suite 301
Great Falls, MT 59401
rachel_julagay@fd.org
Phone: (406) 727-5328
Fax: (406) 727-4329
    Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS MONTANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DOUGLAS WOODCOCK,<br><br>Defendant. | Case No. CR 21-17-GF-BMM<br><br>**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING** |

Defendant John Douglas Woodcock, by and through his attorneys, Rachel Julagay, Assistant Federal Defender and the Federal Defenders of Montana, hereby submits his Memorandum in Aid of Sentencing.

### I.    Introduction

A sentence of no more than 60 months imprisonment, the statutory mandatory minimum required by statute, followed by a term of supervised release, is sufficient and serves the objectives of sentencing.

1

For eight months in 2019, John Woodcock viewed child pornography on his cell phone. When confronted by law enforcement, he fully admitted to this conduct. He never committed any hands-on offense, and prior to this offense, had zero criminal history at the age of 41; he has never served a day in jail. Summonsed to court, John complied and has since complied with all terms of pretrial supervision. For this conduct, and with this background, John faces a guideline range of imprisonment of 97-121 months. For reasons detailed herein, including a number of relevant findings of the United States Sentencing Commission in a 2021 report regarding application of the current sentencing guidelines for non-production child pornography offenses, the still lengthy mandatory minimum sentence of five years is more than sufficient to accurately reflect John's actual conduct and provide just punishment. Discussed in greater detail below, this report identifies a number of the same sentencing enhancements at issue in this case, enhancements that apply at extremely high rates to non-production child pornography offenses but fail to consistently correlate to culpability or other legitimate aims of sentencing. These findings as applied to John's case, and in view of the totality of the § 3553(a) factors, demonstrate a sentence of no more than the statutory mandatory minimum of five years achieves the aims of sentencing.

## II.  Applicability of Sentencing Factors in 18 U.S.C. § 3553(a)

### A.  The Offense and the Offender- 18 U.S.C. § 3553(a)(1)

John Woodcock is 41 years old. Prior to his arrest for the instant offense, John had no prior criminal history.[1] John has always worked hard and been consistently employed, working two jobs for much of his adult life; his current employment includes full-time work as a clerk at Conoco gas station and mart as well as delivering papers for the Great Falls Tribune, work he has done for several years to supplement his income and fill his time. John identifies long struggling with insomnia, one reason that prompted him to take the paper delivery job.

John first learned of law enforcement investigation into the instant offense when they arrived to search his home and take his electronic devices in late 2019. John cooperated with law enforcement, and after that, continued working and eventually was summonsed for arraignment on April 6, 2021. Since his arraignment, John has continued working, and to the knowledge of the Undersigned, has had no violation conduct while being supervised on Pretrial Services. Due to statutory requirements, John has not only been supervised, he has also complied with

---

[1] John recalled an incident of possible trespass at the age of 19 during the presentence report ("PSR") interview, referenced at Paragraph 39 of the PSR but official record of that was not located at the time the final PSR was provided to counsel.

additional requirements of home detention and location monitoring while on Pretrial Supervision.

### B. The Kinds of Sentences Available- 18 U.S.C. § 3553(a)(3)

The presentence report accurately sets forth the kinds of sentences available.

### C. The Guidelines and Policy Statements

The presentence report accurately sets forth the applicable guidelines in this matter. However, potential flaws with the non-production child pornography guidelines identified in the June 2021 report issued by the United States Sentencing Commission, "Federal Sentencing of Child Pornography Non-Production Offenses," (hereafter "the commission report") bear consideration in determining the sentence that is sufficient, *but not greater than necessary*, to achieve the aims of sentencing in this case.

**The Statutory Mandatory Minimum and Receipt vs. Possession**

First, a statutory matter that should be acknowledged: John pled guilty pursuant to a plea agreement to *receipt* of child pornography, which carries a five-year mandatory minimum sentence. As acknowledged in the commission report, "the conduct underlying a receipt conviction is usually indistinguishable from a possession conviction, which does not carry a mandatory minimum sentence." It is unclear how, if at all, this distinction is justified, but with the passage of the PROTECT Act in 2003 and the resulting mandatory minimum sentence for both

receipt and distribution, the government retains the discretion to charge receipt, rather than possession, thereby triggering the mandatory minimum. The commission report bears out a trend that may reflect a choice by the government to charge receipt over possession: while possession cases dominated from 2007 to 2011, after 2011, receipt and distribution cases exceeded possession cases, with this gap increasing further between 2017 and 2019, and further still in 2019. Given the lack of meaningful distinction between the conduct underlying receipt and possession, it is difficult to imagine this charging choice reflects anything other than a desire to have the mandatory minimum sentence.

Setting aside the mandatory minimum quandary of receipt versus possession, additional questions of logic in the sentencing equation for non-production child pornography offenses are raised by the sentencing guidelines, specifically, the application of § 2G2.2, the guideline at issue here. Intended to "increase the offense level based on the presence of an *aggravating* factor," in cases where these increases are uniquely warranted, several enhancements that considerably increase the sentencing guideline range instead "routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application rate."[2]

---

[2] Commission Report, p. 19

**The Enhancement for Using a Computer**

One such notable enhancement is the two-level enhancement for use of a computer, which applies at a rate of 93.8% for receipt offenses. Particularly in this technological age it is unclear why the use of a computer reflects greater culpability. But even if there is some link to culpability and using a computer, the extremely high application percentage of this enhancement indicates it does not reflect aggravated conduct, but rather, reflects only the normative conduct for the offense. In this sense, this enhancement suffers from the same infirmity as the actual methamphetamine guidelines which, once intended to punish a more culpable subset of methamphetamine offenders who possessed pure methamphetamine, now apply almost universally due to the prevalence of pure methamphetamine, and thereby fail to reflect increased culpability.[3]

And this enhancement has considerable effect on an individual's guidelines. For John Woodcock, this two-level increase alone causes the advisory guideline range to increase from 78-97 months to 97-121 months. Again, this begs the

---

[3] *See*, *United States v. Nawanna*, 321 F.Supp. 3d 943, 950 (N.D. Iowa 2018), for a discussion of why an Iowa district court judge (joined by others in cases before and since) rejected the actual methamphetamine guidelines based on policy due to a lack of data justifying the disparity between actual methamphetamine and "regular" methamphetamine guidelines and the general failure of drug purity to serve as an indicator of culpability.

question: What about the use of a computer justifies a near 20-month increase in culpability?

In an effort to understand the rationale behind this enhancement we look to its origins and stated reasons for this increase. The computer enhancement was first added by Amendment 537 in 1996 responsive to a congressional directive. At its inception, the computer enhancement was limited to circumstances where the computer was used to solicit participation of a minor to produce sexually explicit material or to transmit the material or advertise. Though further explanation is not provided, it would appear the enhancement sought to target those trying to solicit minors to engage in conduct or actively distributing—fair goals. But then, in 2003, Amendment 661 added using a computer for simple receipt (or distribution); no explanation was provided about why receipt should be lumped in with distribution, or those communicating with minors. In 2004 the computer enhancement was again expanded when Amendment 664 added use of a computer for *possession* after the previously separate possession guideline was collapsed into 2G2.2. Amendment 664 also increased the base offense level across the board from 17 to either 18 (possession) or 22 (applicable to receipt). This amendment sought to incorporate provisions of the PROTECT act but spoke little about the rationale behind increasing punishments wholesale. The amendment did acknowledge that the newly increased base offense level for receipt caused it to be higher than possession, despite the

Commission determination in most cases "the conduct involved in such 'simple receipt' cases in most instances was indistinguishable from 'simple possession' cases."[4] But because the *statutory* penalties for receipt were the same as trafficking, the Commission determined the two-level reduction for non-distribution sufficiently addressed the possession-receipt discrepancy…even though receipt was still punished more harshly than the seemingly indistinguishable offense of possession. *See*, Amendment 664, USSG § 2G2.2.

What does this evolution illustrate about the rationale behind an enhancement for "use of a computer"? Without getting further afield in this issue, what this history arguably illustrates is that while the computer enhancement likely *started* as a legitimate attempt to target the worst offenders (those preying on minors in real time and distributors or creators), this purpose was ultimately lost in a maze of amendments. And that further, some of these amendments also resulted in arbitrary distinctions between the sentencing ranges for receipt version possession.

Finally, to illustrate the impact of both the divergent treatment of receipt and possession, and the "use of computer" enhancement, if John were to plead guilty to possession, instead of receipt, and not be subject to the computer enhancement, he would face a sentencing guideline range of 63-78 months.

---

[4] The commission also added a two-point *reduction* for receipt where there was no distribution, but for reasons that are unclear, this still meant the base offense level for receipt was two points higher than possession.

**Other Enhancements that Apply to Most Offenders**

The use of computer enhancement is not the only enhancement provided for by § 2G2.2 for non-production offenses that the commission report identified as applying so uniformly as to fail to consistently reflect varying levels of culpability. The "age of victims" enhancement, for depictions of victims prepubescent or under 12 applies at rates of 96.8%, 89%, and 96.3% for distribution, receipt, and possession, respectively. Enhancements for the number of images, pursuant to § 2G2.2(b)(7), apply at similar rates. The "number of images" enhancements, which start at a two-point bump for ten images, up to the *five-point* bump for 600+ images applicable to John, applies at rates of 97%, 87.7%, and 95.4% to distribution, receipt and possession offenders, respectively.

The problem identified in the commission report is that these enhancements apply to the majority of cases, meaning that rather than corresponding to culpability and punishing aggravated versions of non-production child pornography offenses, these enhancements apply to nearly all non-production defendants. This results in longer sentencing guideline ranges across the board.

But beyond the near-universal application of these enhancements is an issue not discussed in the commission report. When compared to enhancements available for other types of offenses, the enhancements for non-production child pornography offenses are both numerous *and* add up to considerable increases in view of the

actual added conduct being punished. For the sake of comparison, here are a few enhancement examples applicable to hands-on offenses found elsewhere in the Sentencing Guidelines:

1. Enhancement of two (2) applies in § 2A3.1, Criminal Sexual Abuse, if the victim was in the offenders custody, care or control;

2. Enhancement of four (4) applies, also in § 2A3.1, Criminal Sexual Abuse, if the victim sustains permanent or life-threatening injury in the course of the sexual abuse;[5]

3. Enhancement of three (3) applies, in § 2A2.4, Obstructing or Impeding Officers, if a firearm was both possessed *and* its use was threatened;

4. Enhancement of two (2) applies, in § 2A2.4, Obstructing or Impeding Officers, if the victim was actually injured;[6]

5. Enhancement of five (5) applies, in § 2A2.2, Aggravated Assault (which already requires aggravating factors) if a firearm is not just possessed or brandished, but discharged during the assault.

The comparison of hands-on offense enhancements to child pornography enhancements is provided to illustrate that, in addition to the issues identified in the commission report, non-production child pornography enhancements are having an

---

[5] Almost as many points as applies for having 600+ images with no hands-on offense.
[6] The math reveals that if an individual possesses and threatens use of a firearm in the course of obstructing an officer, *and* actually injures the victim, then you can arrive at the same five-level enhancement for 600+ images.

10

outsize impact on sentencing relative to more egregious conduct in hands-on offenses.

Pointing this comparison out is in no way intended to undercut the seriousness of child pornography—there is no doubt that child pornography is beyond horrible; its existence is the product of awful, criminal acts perpetrated on vulnerable children. This does not mean that there cannot be rationality in sentencing of those offenders, and what the commission report illustrates is that some of that rationality—for non-production offenses, which are different from those making or distributing this material—has been lost. Recognition of this need for rationality may well explain one phenomena identified by the commission report: district court judges across the nation are sentencing receipt and possession offenders below the guidelines with an overwhelming majority of 81.5% of these defendants sentenced below their advisory guideline range.[7]

After reviewing the totality of this information, the commission report concluded that § 2G2.2 "no longer effectively differentiates among offenders in terms of either the seriousness of the offense or culpability of the offender."[8] This naturally does not mean that the guideline never accurately reflects the offense or culpability. But for John Woodcock, who developed an addiction that escalated into

---

[7] Commission Report at pp. 54-55.
[8] Commission Report at p. 69.

possession of several hundred images, but who did not willfully distribute, did not engage in communication with minors, and certainly no hands-on offenses, who expresses remorse and regret, and for whom this is an anomaly, the majority of enhancements that increase his sentencing range *thirteen levels* (more than half again) appear to do little to reflect his actual culpability. Certainly, they do little to reflect his potential for reform and rehabilitation, which he will be given the opportunity to seek in the community setting only after a considerable prison sentence.

### III. Sentencing in Accordance with the Sentencing Mandate in 18 U.S.C. § 3553(a)(2)

As stated above, a sentence of no more than sixty months, or five years, will be more than sufficient to serve the aims of sentencing. In addition to this custodial sentence, John will be required to pay tens of thousands in restitution, a substantial sum for most people, but particularly given his modest income, will require considerable time for him to pay.

This is a situation where the guidelines fail to align with the statutory aims of sentencing. As noted in the introduction to the commission report, this is the second time the Sentencing Commission has addressed the child pornography guidelines. Several factors led to the commission to write a second report, including an overall increase in child pornography prosecutions, steadily increasing sentences below the applicable guideline ranges, and the drastic increase in volume and accessibility of

child pornography in large part due to technological advances. In sum, considerable changes in this area warrant a wholesale reexamination of the non-production guidelines, and certainly warrant examination of how these guidelines apply to this case.

Five years is a lengthy custodial sentence. It is more than adequate time to achieve aims of punishment and deterrence, both general and specific; it is unclear what a sentence twice or even a third again that length would achieve. After his release, John will have a federal felony child pornography conviction, he will be required to register as a sex offender, he will be supervised and required to complete the onerous and lengthy sex offender treatment program, and will have to comply with a range of other conditions, including the considerable restitution referenced above.

Together, these punitive consequences constitute a sentence that is more than sufficient to achieve the aims of sentencing.

## IV.   Conclusion

For the reasons stated above, Mr. Woodcock requests the Court's consideration.

RESPECTFULLY SUBMITTED this 28th day of December, 2021.

/s/ Rachel Julagay

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on December 28, 2021, a copy of the foregoing document was served on the following persons by the following means:

```
 1, 2   CM-ECF
_____   Hand Delivery
   3    Mail
_____   Overnight Delivery Service
_____   Fax
   4    E-Mail
```

1. CLERK, UNITED STATES DISTRICT COURT

2. CYNDEE L. PETERSON
   Assistant United States Attorney
   United States Attorney's Office
         Counsel for the United States of America

3. JOHN DOUGLAS WOODCOCK
         Defendant

4. PEYTON JONES
         United States Probation Officer


                              /s/ Rachel Julagay